**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------

CARLOS I. MEDINA,

                         Petitioner,

           v.                                          09-CV-1190
                                                          (LEK/DRH)

DALE ARTUS, Superintendent,
Clinton Correctional Facility

                         Respondent.

--------------------------------------------------------------

**APPEARANCES:**                             **OF COUNSEL:**

CARLOS I. MEDINA
Petitioner Pro Se
05-B-3329
Clinton Correctional Facility
Post Office Box 2001
Dannemora, New York 12929

HON. ERIC T. SCHNEIDERMAN        ALYSON J. GILL, ESQ.
Attorney General of the                  PAUL M. TARR, ESQ.
  State of New York                   Assistant Attorneys General
Attorney for Respondent
120 Broadway, 12th Floor
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Petitioner pro se Carlos I. Medina ("Medina") is currently an inmate in the custody of

the New York State Department of Correctional Services (DOCS) at Clinton Correctional

Facility.  On September 23, 2005, a jury convicted Medina of murder and possession of a

---

     [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

weapon.  T. 979-82.[2]  Medina was sentenced to, and is currently serving, a total

indeterminate term of twenty-five years to life imprisonment.  S. 12-14.[3]  Medina seeks a

writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that 1) the admission

of the victim's dying declaration was improper and in violation of his rights under the Sixth

Amendment's Confrontation Clause; 2) the trial court improperly admitted the victim's

statement as an excited utterance and then instructed the jury to consider it as a dying

declaration; and 3) there was insufficient evidence to establish that Medina had acted

either as the principle or as an accessory to second-degree murder.  For the following

reasons, it is recommended that the petition be denied.


## I. Background

On January 31, 2005, Medina purchased a .22 caliber rifle and two clips of

ammunition from Wal-Mart in North Utica.  T. 614-630.  The following evening, February 1,

2005, Juan Cirino was shot and killed by a .22 caliber projectile.  T. 336-39, 343-44, 596-

97.  The evening of the shooting, Medina was seen driving his green minivan and carrying

a pistol, with an unidentified person in the back carrying a large firearm, approximately

thirty minutes before the shooting.  T. 404-15.[4]  After hearing several gunshots Osvaldo

---

[2] Citations to "T." followed by a number refer to the pages of the trial transcript filed at Docket No. 13-7, 13-8, and 13-9.

[3] Citations to "S." followed by a number refer to the pages of the transcript of Medina's sentencing filed at Docket No. 13-9, pages 121-35.  Citations will be to the page numbers of the sentencing hearing.

[4] The New York State Department of Motor Vehicles records showed that a green Dodge van was registered to Medina.  T. 543.

Colon, a neighbor, ran out onto his balcony and saw the green minivan and a black car stopped, engines running, and the headlights and interior lights turned off.  T. 228-30, 239. Osvaldo ran downstairs in time to see three individuals jump back into the vehicles and quickly depart without starting the cars or turning on the headlights.  T. 235-40.

After hearing gunshots, people nearby came out of their homes and found Cirino lying between two parked cars.  T. 243-45, 287, 300-02.  Johanna Colon ("Johanna"), a friend of the victim, was about to enter the shower when she heard three to four gun shots and, approximately two minutes later, heard her mother and brother screaming, causing her to run downstairs.  T. 300-01, 310-11.  Johanna saw Cirino on the ground and held him in her arms asking him who shot him.  T. 301-04.  Cirino was unable to respond the first time, so Johanna asked again and he said "Flaco."  T. 304-05.  Unsure if she heard correctly, Johanna asked a third time and Cirino again responded "Flaco", and then began bleeding profusely from the mouth.  T. 305.  Julia Colon was also at the scene, leaning over Johanna as she was talking to Cirino, hearing him answer "Fla".  T. 287-90.  Flaco is the nickname/street-name of Medina.  T. 306.

Jonathan Carrasquillo knew Medina for many years.  T. 376.  The day after the shooting Carrasquillo spoke to his girlfriend, with whom he had a child, noting that she was very distraught.  T. 368-70.  After talking to her, Carrasquillo called Medina and told him to stay away from his house because his child was there.  T. 371-73.  Medina responded by threatening Carrasquillo "that whoever g[ot] involved  . . . would go" and that Medina would "kill [Carrasquillo and his child] . . . like he did the other."  T. 371-73.  Knowing that Cirino was killed the night before, Carrasquillo assumed that Cirino was "the other" to whom Medina referred.  T. 373-74.  Also that day, police secured a search warrant for Medina's

3

home where they found the receipt for the recently purchased .22 caliber rifle and ammunition.  T. 456-57, 460, 545-50.  While conducting a walk-through of the basement, police observed multiple .22 caliber shell casings on the floor, a rifle box, and a metal kettle and metal vent, both of which were full of bullet holes.  T. 456-69, 482-83.  An autopsy of Cirino revealed that he had been shot with a hollow point projectile, identical to those previously purchased by Medina,  which had the same measurements as that of the .22 caliber rifle purchased by Medina from Wal-Mart.  T. 598-99, 611, 614-18.

Throughout the trial process, the admission of Cirino's dying declaration was a point of contention.  Medina's objections to the admission of the dying declaration/excited utterance began in the pretrial conference.  P. 21-22.[5]  The trial court admitted the statement under <u>Crawford v. Washington</u>.  P. 22; <u>see</u> <u>also</u>  <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).[6]  Medina also objected to the admission of Cirino's statements during Johanna Colon's testimony, contending that any testimony made by Johanna as to statements made by Cirino were hearsay.  T. 305.  The trial court overruled the objection, finding that the statement was an excited utterance.  <u>Id.</u>

Medina was found guilty and sentenced as indicated above.  On July 3, 2008, the Appellate Division unanimously affirmed Medina's conviction.  <u>People v. Medina</u>, 53 A.D.3d 1046 (4th Dep't 2008);  Dkt. No. 13-3, Ex. C.  On August 4, 2008, Medina filed for

---

[5] Citations to "P." followed by a number refer to pages of the transcript of the pretrial hearing, filed Docket No. 13-6.

[6] In <u>Crawford</u>, the Supreme Court held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."  541 U.S. at 68.  The definition of "testimonial" "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  <u>Id.</u>

leave to appeal to the New York Court of Appeals.  Dkt. No. 13-4, Ex. D.  The New York

Court of Appeals denied leave to appeal on November 20, 2008.  People v. Medina, 11

N.Y.3d 856 (2008);  Dkt. No. 13-5, Ex. E.  This action followed.


## II. Legal Standards

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a

federal court may grant habeas review only if state court proceedings "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States," or

was "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2) (1996).  A state court

has decided a case on the merits when it disposes of the claim on substantive, rather than

procedural grounds; it is also not necessary that the state court refer to federal law or

federal case law.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

When evaluating a habeas petition, "a determination of factual issue made by a

State court shall be presumed to be correct [and t]he applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §

2254(e)(1).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court

has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-

13 (2000).  Under the "unreasonable application" clause, a federal court may review the

habeas petition if the state court's application of Supreme Court precedent was "objectively unreasonable." Id. at 409.

### III. Procedural Background

### A. Exhaustion

Respondent contends that Medina has not exhausted his second claim because Medina relied solely on New York statutory and case law in support of his claim that there was no foundation for the admission of the victim's statement as an excited utterance and that the jury was improperly instructed to consider it as a dying declaration. Respondent does not contest that Medina exhausted the Sixth Amendment Confrontation Clause and legal sufficiency claims.

An application for a writ of habeas corpus may not be granted until the prisoner has exhausted all remedies available in state court. 28 U.S.C.A. § 2254(b), (c). The exhaustion requirement is not satisfied unless the federal claim has been "fairly presented" to the state courts. Id. The Second Circuit has held that petitioner also may present the "constitutional nature" of a claim without citing directly to the Constitution by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Att'y Gen., 696 F.2d 186, 194 (2d Cir. 1982).

Medina's first claim, that the admittance of victim's dying declaration was improper

6

and in violation of his right to confrontation under the Confrontation Clause of the Sixth Amendment, was raised both at the Appellate Division and in the application for leave to the Court of Appeals.  In both appeals Medina stated his claim in constitutional terms, asserting that his Sixth Amendment right to confrontation had been violated by allowing the statements to be admitted into evidence.  This claim has been both fairly presented to the state court and alerted the state court to the Medina's federal claim; therefore, Medina's claim that the admission of the victim's dying declaration was improper and in violation of his Sixth Amendment rights has been exhausted.[7]

Medina's second claim, that the trial court improperly admitted the victim's statement as an excited utterance, but then instructed the jury to consider it a dying declaration, was raised at the appellate Division and in the application for leave to the Court of Appeals.  This claim has been fairly presented to the state court, but is not stated in constitutional terms.  As discussed in Daye, a petitioner does not have to cite directly to the Constitution in order to address the constitutional nature of his claims.  Id. at 194. However, Medina failed to appraise the court of the constitutional nature of the claim because he did not cite directly to the Constitution, rely on federal case law which used a constitutional analysis, use terms specific to those rights protected by the Constitution, or cite to a fact pattern "within the mainstream of constitutional litigation."  Id.  Medina only stated New York statutory and case law in his claim.  Therefore, this claim is unexhausted.

Medina's third claim, that there was insufficient evidence to establish that Medina had acted either as the principle or as an accessory to murder, was raised at the appellate

---

[7] See also subsection IV(A) infra.

Division and in the application for leave to the Court of Appeals.  This claim has been fairly presented to the state court but not stated in constitutional terms.  Although Medina only cited to New York statutory and case law, it is apparent that he was invoking the legal sufficiency standard which is stated "in terms so particular as to call to mind a specific right protected by the Constitution."  Daye, 696 F.2d at 194.  Therefore, the state court was alerted to Medina's federal claim and the claim is exhausted.

Therefore, Medina brings both exhausted and unexhausted claims.  Under the AEDPA, even though a petitioner has exhausted and unexhausted claims, it allows the writ to be "denied on the merits, not withstanding the failure . . . to exhaust . . . " 28 U.S.C. 2254(b)(2).

## IV. Discussion

### A. Confrontation Clause

Medina claims that the admission of the victim's statements was improper and in violation of his Sixth Amendment right to confrontation.  Respondent argues that the confrontation claim is procedurally barred from habeas review.  Under New York law, objections must be made at trial so "the court ha[s] an opportunity of effectively changing the same."  N.Y. Crim. Proc. Law § 470.05(2).  According to respondent and the Appellate Division, Medina failed to preserve his right for appellate review on his contention that the dying declaration violated his constitutional right to confrontation.  Medina, 53 A.D.3d at 1047.  The transcript demonstrates that defense counsel objected to the testimony as hearsay, but never objected on the grounds that it violated Medina's Sixth Amendment

8

right to confrontation.  T. 305.  However, during a pretrial conference, defense counsel

also objected to the testimony on the ground that it violated Medina's right to

confrontation, stating that he "believe[d] there may be a <u>Crawford</u> issue as to [the] inability

to confront the decedent."  P. 22.  The trial court admitted the testimony in evidence,

explaining that <u>Crawford</u> dealt with questioning by police rather than private individuals.  P.

22.  Based on the trial objection and citation to federal case law, Medina is not

procedurally barred from review on this claim and is entitled to review on the merits.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused

shall enjoy the right to . . . be confronted with the witness against him . . . ."  U.S. Const.

amend. VI.  The Supreme Court has held that the Confrontation Clause prohibits

testimonial statements when there is not an opportunity to cross-examine.  <u>Crawford</u>, 541

U.S. at 68.  In <u>Crawford</u>, the Court "le[ft] for another day any effort to spell out a

comprehensive definition of 'testimonial.'"  <u>Id.</u>  However, "it applies at a minimum to prior

testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police

interrogations."  <u>Id.</u>  In <u>Davis v. Washington</u>, the court further defined "testimonial" as when

"the primary purpose of the interrogation is to establish or prove past events potentially

relevant to later criminal prosecution."  547 U.S. 813, 822 (2006).  However, "[s]tatements

are nontestimonial when made in the course of police interrogation under circumstances

objectively indicating that the primary purpose of the interrogation is to enable police

assistance to meet an ongoing emergency."  <u>Id.</u>

In this case, the Appellate Division rejected Medina's Sixth Amendment

confrontation claim on both procedural and substantive grounds.  <u>Medina</u>, 53 A.D.3d at

1047.  The Appellate Division held that Medina's contention of a violation of the

confrontation clause "lacks merit." Medina, 53 A.D.3d at 1047.  This is because "the

responses by the victim to his friend after sustaining a fatal wound bear no similarity to the

kind of formal interrogation by authorities that the Supreme Court found to be part of the

Sixth Amendments core concerns." Id. at 1047 (quotations omitted & citations omitted).

For the reasons stated in Section II above, these factual determinations require deference

and a presumption of correctness as they have not been proven to be a contrary or

unreasonable application of federal law.

The statement in question was made by the victim, Cirino, to a friend, Johanna,

after a fatal gun shot wound to the back.  Johanna asked Cirino who shot him and he

twice responded "Flaco," Medina's street alias.  The facts of the case do not meet the

criteria for formal testimony which would be barred under the Confrontation Clause

because this was a friend asking who had shot him shortly after the event had occurred.

This friend was not a government officer, was not interrogating Cirino for information, and

was presumably motivated to ask the questions out of concern for her injured friend and

not to marshal evidence to build a case against the perpetrator.  Therefore, the statements

were non testimonial.  See Crawford, 541 U.S. at 56 n. 6 ("Although many dying

declarations may not be testimonial, there is authority for admitting those that clearly are.")

(citations omitted); United States v. Feliz, 467 F.3d 227, 232 (2d Cir. 2006) (explaining

"that a statement produced through the involvement of government officers and with an

eye towards trial is testimonial," so those that are not produced under such terms, like

autopsy reports, are nontestimonial) (internal quotation marks and citations omitted).  The

statement was allowed in court as an excited utterance and was received as an exception

to the hearsay rule.  T. 305.  Since the statement was not testimonial, the admission in

evidence did not violate either the Sixth Amendment's Confrontation Clause or the Supreme Court's ruling in Crawford.

Therefore, the petition should be denied on this ground.


### B. Improper Admission of Excited Utterance

Medina claims that the trial court improperly admitted the victim's statement as an excited utterance and then instructed the jury to consider it as a dying declaration. "An 'excited utterance' is recognized as a traditional exception to the hearsay rule under both New York and federal law." Mungo v. Duncan, 277 F. Supp. 2d 176, 183 (E.D.N.Y. 2003) (citations omitted). An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Id. (internal quotation marks and citations omitted); See also United States v. Jones, 299 F.3d 103, 112 (2d Cir 2002). "[T]he reliability of a statement increases as opportunity for reflection by the declarant decreases." United States v. Jones, 299 F.3d at 112. A victim's statement may properly be admitted as a hearsay exception pursuant to either the dying declaration or excited utterance rules. Mungo, 277 F. Supp. 2d at 184.

According to the record, Johanna was upstairs about to enter the shower, heard three to four gun shots and, heard her mother and brother screaming approximately two minutes later, and ran downstairs. After running downstairs she immediately tended to the victim, asking him who shot him. The victim was unable to respond the first time so Johanna asked again and he said "Flaco." Unsure if she heard correctly, Johanna asked

a third time, where Cirino again responded "Flaco" and then began bleeding profusely from the mouth.  Based on the record the "decisive factor [of ] whether the surrounding circumstances reasonably justify the conclusion that the remarks were not made under the impetus of studied reflection" is met.  People v. Edwards, 47 N.Y. 2d 493, 497 (N.Y. 1979).

The Appellate Division also decided this claim on the merits, holding that "one-word responses of the victim to questioning from a friend concerning who shot him were properly admitted under the excited utterance exception the hearsay rule inasmuch as the victim's responses, identifying defendant as the shooter, were 'not made under the impetus of studied reflection.'"  Medina, 53 A.D.3d at 1047 (quoting Edwards, 47 N.Y. 2d at 497).  Based on the record the Appellate Division found that the "responses were made while the victim was 'under the continuing influence of the stress and excitement generated by the initial event.'"  Medina, 53 A.D.3d at 1047 (quoting People v. Brown, 70 N.Y. 2d 513, 522 (2d Cir 1987)).  For the reasons stated in Section II above, these factual determinations require deference and a presumption of correctness as they have not been proven to be a contrary or unreasonable application of federal law.  Thus, the trial court properly admitted the victim's statement as an excited utterance.

In order for a habeas petitioner to prevail on an alleged evidentiary error, the petitioner must show that the "error amounted to a deprivation of due process . . . [and] was so pervasive as to have denied him a fundamentally fair trial."  Mungo, 277 F. Supp. 2d at 182 (citations omitted).  "The standard . . . [is] whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would

have existed on the record without it.  In short it must have been crucial, critical, highly

significant."  Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (internal quotations and

citations omitted).

The admission of the excited utterance was not so crucial, critical or highly

significant as to represent the sole piece of evidence of Medina's guilt.  As previously

stated, Medina bought a weapon and ammunition the day prior to the murder, matching

the same model, type, and caliber of weapon later determined to have killed Cirino.

Medina owned a van which matched the description of the one seen fleeing the scene

after shots were fired.  Medina was identified driving the van, with a weapon, prior to the

shooting.  Medina threatened an individual that he would kill him like he did "the other", the

day after Cirino was found dead.  Police also found what amounted to a home-made

shooting range in Medina's basement, recovering additional bullets of the same make and

caliber found in Cirino during his autopsy.  Accordingly, even if the admission of the

testimony could be said to be evidentiary error, it is not of the degree to deprive Medina of

due process and a fair trial.  The petition on this ground should be denied.

Medina further contends that the trial court allowed victim's statement as an excited

utterance and then instructed the jury to consider it as a dying declaration.  In providing

instruction to the jury about the statement the court stated:

> You have heard testimony during this trial that before his death the
> deceased, Juan Cirino, made a statement in the nature of a dying
> declaration, that being something to the effect that Flaco shot me, as
> testified to by the witness Johanna Colon.  If you find that Juan made this
> statement concerning how he received his fatal injury as testified to by
> Johanna Colon, you would bear in mind in determining how much weight you
> would give to the statement that such evidence is a statement of what was

13

said by Juan Cirino while he was not under oath, made while he was lying on the ground and made while his body was no doubt in pain, his mind agitated and perhaps his memory shaken by thoughts of impending death.

Clearly, Juan Cirino, the victim of this homicide, could not come here to testify because he is dead.  So his unsworn statements of what happened to him is considered as the best evidence obtainable and is admitted for your consideration.

However, while dying declarations when received into evidence as in this case are entitled to be considered by you and given such weight as you believe they deserve, they cannot be regarded as having the same value and weight as the sworn testimony of a witness in open court whom you can see, whose testimony is subject to cross-examination and whose credibility can thus be evaluated first hand by you.

T. 958-59.

The instructions called the statement a dying declaration rather than an excited utterance.  However, the instructions also stressed that the weight given to the statement should be determined by the jurors and was not to be given the same weight as in court testimony.  In People v. Mleczko, the court held that the "defendant was entitled to have the jury instructed . . . that the dying declaration is not to be regarded by the jurors as having the same value and weight as the sworn testimony of a witness in open court." 298 N.Y. 153, 161 (N.Y. 1948) (internal quotations omitted).  Additionally "[i]t has never been the rule that a court must always instruct the jury when hearsay evidence is admitted although in certain cases -- as, for example, when dying declarations are admitted -- special instructions may be required."  Letendre v. Hartford Acc. & Indem. Co., 21 N.Y. 2d 518, 524-25 (N.Y. 1968) (citing People v. Mleczko, 298 N.Y. 153, 161).  The statement was properly allowed in evidence as an excited utterance, an exception to the hearsay rule, which "do[es] not require special instructions to the jury."  People v. Corbin, 284 A.D.

14

2d 408 (N.Y. 2001).  Therefore, there was no requirement for special instructions for the jury.

The Appellate Division found that the statement was properly admitted as an excited utterance and, therefore, they rejected the defendant's claim "that the county court erred in failing to instruct the jury concerning excited utterances because, '[u]nlike dying declarations, excited utterances do not require special instruction.'"  Medina, 53 A.D.3d at 1047 (quoting People v. Corbin, 284 A.D. 2d 408, 408 (2d Cir 2001)).  The Appellate Division also held that because the statement was properly admitted "it is of no moment that the court treated the responses as dying declarations in its jury instructions, and we need not address whether the responses were indeed dying declarations."  Medina, 53 A.D.3d at 1047.  Accordingly, the state court's decision  regarding these factual determinations require deference and a presumption of correctness as they have not been proven to be a contrary or unreasonable application of federal law.

It is well established "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  See generally Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (citations omitted).  For federal relief to be granted "on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated the state law but also that the error violated a right guaranteed to him by federal law."  Casillas v. Scully, 792 F.2d 60, 63 (2d Cir. 1985) (citations omitted); see also Cupp v. Naughten, 414 U.S. 141, 146 (1973) (holding that before a federal court can disturb a state court conviction based on the jury "instruction . . . used, it must be established not merely that the instruction is undesirable,

15

erroneous, or even universally condemned, but that it violated some [Constitutional] right . . . .") (internal quotation marks omitted).  "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief."  Estelle, 502 U.S. at 71-72.  The ultimate question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Cupp, 414 U.S. at 147.

Even if it could be said that the state court instruction was incorrect, the instructions did not so infect the trial as to violate Medina's right to due process.  In order to violate due process, the error must be "sufficiently harmful to make the conviction unfair."  Jackson v. Edwards, 404 F.3d 612, 624 (2d Cir. 2005) (citations and internal quotation marks omitted).  For the reasons outlined above, even if no jury charge had been given concerning the excited utterance and it had been disallowed from the trial, there was still sufficient evidence proffered to conclude that Medina was guilty of Second Degree Murder.  Therefore, the presence of the instruction did not make the conviction unfair.

For the reasons stated above, the petition on these grounds should be denied.


### C. Insufficient Evidence

To be entitled to habeas relief for insufficient evidence, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 324 (1979).  In addition, the record must be reviewed "in the light most favorable to the prosecution" and when "faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution."  Id. at 324, 326.  In seeking

16

habeas corpus review, a petitioner who claims that the evidence was insufficient to sustain a conviction bears a "very heavy burden." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).  The reviewing court must defer to the jury's determination as to the weight of the evidence and the credibility of the witnesses. United States v. Velasquez, 271 F.3d 364, 370 (2d. Cir 2001).

When reviewing a claim of insufficient evidence in a state conviction, "[a] federal court must look to state law to determine the elements of the crime." Fama, 235 F.d at 811 (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999)); see also Policano v. Herbert, 430 F.3d 82, 87 (2d Cir. 2005).  Medina was convicted of murder in the second degree, N.Y. Penal Law § 125.25(1), and criminal possession of a weapon in the fourth degree, N.Y. Penal Law  § 265.01(2).  "A person is guilty of murder in the second degree when: (1) With intent to cause the death of another person, he causes the death of such person or of a third person . . . . "  N.Y. Penal Law § 125.25(1).

Medina claims there was insufficient evidence to establish that he acted either as the principal or as an accessory to second-degree murder.  The Appellate Division rejected petitioner's claim, concluding that when the evidence is viewed in the light most favorable to the People, "the evidence is legally sufficient to support the conviction either as a principal or as an accomplice."  Medina, 53 A.D.3d at 1047-48.  These factual determinations require deference and a presumption of correctness as they have not been proven to be a contrary or unreasonable application of federal law.

The day before the shooting Medina purchased a .22 caliber rifle and ammunition and on the day of the shooting was seen near the murder scene driving his green minivan

17

while carrying a pistol.  After gunshots were heard three individuals were seen running to a parked green minivan, identical to the one registered to Medina, and a black car.  They jumped into the vehicles and drove off without starting the cars or turning the headlights on.  Cirino was found laying on the ground by friends and neighbors and when asked who was responsible, he responded "Flaco," a name by which Medina is known.  Cirino was shot and killed by a .22 caliber projectile, the same type of weapon and ammunition which Medina had purchased the day before.  The day after the shooting Medina threatened to kill Carrasquillo "like he did the other."  Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found proof of guilt beyond a reasonable doubt that Medina acted as a principle in the murder.  Furthermore, even if it could be said that Medina himself did not kill Cirino, a rational trier of fact could "have concluded that [Medina] shared a community of purpose with his companions and was thus guilty of second degree murder."  Ramos v. Artuz, 40 F. Supp. 2d 206, 207 (S.D.N.Y. 1999) (citations omitted).

Therefore, there was sufficient evidence to support the conviction and the petition should be denied on this ground.

## IV. Conclusion

For the reasons stated above, it is recommended that the petition for a writ of habeas corpus be **DENIED**.

Furthermore, the Court finds that petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of

18

appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d. Cir. 2000).  Therefore, the Court recommends that no certificate of appealability should issue with respect to any of petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.   Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan, 984 F.2d at 89 (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**
Dated: February 17, 2011
        Albany, New York

David R. Homer
U.S. Magistrate Judge

19